UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAKE CHARLES DIVISION

| | |
|---|---|
| **CHADWORTH ROBERTSON-DEWAR** | **CIVIL ACTION NO. 2:11-cv-1502** |
| | **SECTION P** |
| **VERSUS** | |
| | **JUDGE MINALDI** |
| **R. CHILDRESS, ET AL** | **MAGISTRATE JUDGE KAY** |

### REPORT AND RECOMMENDATION

Before the court is the *pro se* civil rights complaint filed *in forma pauperis* on August 15, 2011, by plaintiff Chadworth Robertson-Dewar. At the time of filing, plaintiff was an immigration detainee in the custody of the Department of Homeland Security/United States Immigration and Customs Enforcement (DHS/ICE) and was detained at the Federal Detention Center, Oakdale, Louisiana (FDCO). However, while the complaint was pending initial review, he was removed and is now residing in Jamaica, W.I.

Plaintiff complains that FDCO unlawfully appoints "detainee representatives" and that he was placed in the special housing unit (SHU) because he challenged that process. He names the following FDCO individuals as defendants herein: Deportation Officer Jeff Fruge; Special Investigative Services (SIS) Lt. R. Childress; Associate Wardens Marne Boyle and Kimberly Ask-Carlson; Captain Gregory Kizziah; Deputy Captain Benjamin Vallejas; SIS Tech Byrd; Warden JP Young; Special Investigative Agent (SIA) Kramer; SHU Lieutenants Robinson and Chapman; Unit Managers Pierce and Gutierrez; Counselor Yolanda Sweet; and SHU Officer in Charge Lair.

This matter has been referred to the undersigned for review, report, and recommendation in accordance with the provisions of 28 U.S.C. § 636 and the standing orders of the court.

## STATEMENT OF THE CASE

Plaintiff states that at the time of filing, he was confined to the SHU for two hundred and fourteen days. He claims that the reason for his SHU confinement was his challenge (via the administrative remedy process) to FDCO's unlawful policy of appointing detainee representatives. More specifically, he states that the representatives exercise unlawful and undue control over the daily affairs at FDCO, and that FDCO requires the other detainees to obey the representatives.

In particular, plaintiff states that on November 28, 2010, he intervened when a black representative and a Mexican representative colluded to attack a Haitian detainee because the Haitian refused to obey a representative's rule requiring that his cell lights be turned on during a certain time period at night. Plaintiff spoke to the representatives and pointed out that they did not have authority over the other detainees. Doc. 1, p. 12. On December 2, 2010, plaintiff spoke with an FDCO officer about the incident. *Id.* Thereafter, on December 3, 2010, there was a riot at the prison in which plaintiff was not involved; however, plaintiff heard rumors that the representatives were going to tell the officers that he was involved in the riot in order to remove him from the general population. Doc. 1, p. 13.

Plaintiff states that he was placed in the SHU on December 7, 2010, without an administrative detention order. *Id.* On December 13, 2010, defendant Childress interviewed plaintiff and told him that "[y]ou got some haters out here huh? People who don't like you." Doc. 1, pp. 13-14. He was released from the SHU on December 16, 2010. Doc. 1, p. 15.

On December 17, 2010, plaintiff gave defendant Boyle a letter that detailed the mechanics of the representative system. *Id.* On December 21, 2010, one of the representatives asked to speak with plaintiff but he refused stating that there was nothing to talk about. *Id.* On December 24, 2010, plaintiff sought out one of the head representatives to make it clear that he was not a participant in the representative system and did not recognize them as his leaders. *Id.* Plaintiff then talked to an officer regarding an incident involving the television. He was placed back in SHU on January 5, 2011. Doc. 1, p. 16. Defendant Childress interviewed him on January 6, 2011 and informed him that he should agree to a transfer because the Spanish feared him. *Id.* Based on alleged misrepresentations, among other issues, plaintiff asked for a transfer.

In addition to the above, plaintiff complains that he was not given formal hearings concerning his SHU confinement and that FDCO discriminates against immigration detainees in that American inmates are given laundry bags, more than one set of clothing, and priority access to the law library.

As relief, plaintiff requests release from SHU confinement, a hearing every thirty days in order to justify his continued confinement in SHU, and compensatory and punitive damages.

## LAW AND ANALYSIS

### I.     Frivolity Review

Plaintiff has been granted leave to proceed *in forma pauperis* under 28 U.S.C. §1915. Under 28 U.S.C. §1915(e)(2)(B), a district court is directed to dismiss an action if the court determines that the action is frivolous or malicious or fails to state a claim on which relief may be granted. *Bradley v. Puckett*, 157 F.3d 1022, 1025 (5th Cir. 1998). A complaint is frivolous if it lacks an arguable basis in law or fact. *Gonzalez v Wyatt,* 157 F.3d 1016, 1019 (5th Cir. 1998) citing *Siglar v. Hightower,* 112 F.3d 191, 193 (5th Cir. 1997). A complaint fails to state a claim

upon which relief may be granted if it is clear the plaintiff cannot prove any set of facts in support of his claim that would entitle him to relief. *Doe v. Dallas Indep. Sch. Dist.*, 153 F.3d 211, 215 (5th Cir. 1998). When determining whether a complaint is frivolous or fails to states a claim upon which relief may be granted, the court must accept plaintiff's allegations as true. *Horton v. Cockrell*, 70 F.3d 397, 400 (5th Cir. 1996) (frivolity); *Bradley,* 157 F.3d at 1025 (failure to state a claim).

## II. 42 U.S.C. §1983

Section 1983 proscribes conduct by any person who, under the color of state law, acts to deprive another person of any right, privilege, or immunity secured by the Constitution and laws of the United States. 42 U.S.C. §1983. Thus, an initial inquiry in a lawsuit filed under Section 1983 is whether plaintiff has alleged that his constitutional rights have been violated. If no constitutional violation has been alleged, there is no cognizable claim under Section 1983. In order to hold the defendants liable under 42 U.S.C. §1983, the plaintiff must allege facts to show (1) that a constitutional right has been violated and (2) that the conduct complained of was committed by a person acting under color of state law, that is, that the defendant was a state actor. See *Hessbrook v. Lennon*, 777 F.2d. 999, 1005 (5th Cir. 1985).

The court is convinced that plaintiff has presented the best case which could be presented by him under the circumstances, and that further amendment of the pleadings would serve no useful purpose. Accepting all of plaintiff's allegations as true and giving plaintiff the benefit of every doubt, the court concludes, for the reasons stated hereinafter, that he has failed to state a claim for relief, that his claims are frivolous as a matter of law, and that his complaint should therefore be dismissed with prejudice.

### a. Conditions of Confinement

Detainees possess a clearly established constitutional right to be free from punishment. See *Bell v. Wolfish*, 441 U.S. 520, 534-37, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979). The Supreme Court has held that a detainee's claims of unconstitutional conditions of confinement are analyzed under the Fourteenth Amendment's guarantee of due process of law as opposed to the Eighth Amendment's prohibition of cruel and unusual punishment, which applies only to sentenced inmates. *Id*. at 535; *Hare v. City of Corinth*, 74 F.3d 633, 639 (5th Cir.1996). "A 'condition of confinement' case is a '[c]onstitutional attack[ ] on general conditions, practices, rules, or restrictions of pretrial confinement.'" See *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997) (citing *Hare,* 77 F.3d at 644).

When addressing the rights of immigration detainees, the Fifth Circuit instructs that the court should look to jurisprudence establishing the constitutional rights of pretrial detainees. See *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir.1986). In analyzing the civil rights claims of detainees, the Fifth Circuit has distinguished between cases challenging specific acts and omissions and those alleging constitutional deprivations by virtue of the general conditions of confinement. See *Hare*, 74 F.3d at 644. In conditions of confinement cases, the "harm" is said to be caused by the condition itself. "This is true, for example, where inadequate food, heating, or sanitary conditions themselves constitute miserable conditions." *Scott v. Moore*, 114 F.3d 51, 53 (5th Cir.1997). The Fifth Circuit has concluded that where a pretrial detainee challenges the general conditions of confinement, as opposed to particular acts or omissions, a constitutional violation exists only if the court finds that the conditions of confinement are not reasonably related to a legitimate, non-punitive governmental objective. *Scott*, 114 F.3d at 53.

Where a detainee's allegations are based on a particular act or omission of one or more officials, the action is characterized as an "episodic act or omission" case. See *Olabisiomotosho v. City of Houston*, 185 F.3d 521, 526 (5th Cir.1999); *Hare*, 74 F.3d at 645. When an individual government official is sued for a specific act or omission, the detainee-plaintiff must allege and establish that the named defendant acted with subjective deliberate indifference to prove a violation of his constitutional rights. *Olabisiomotosho*, 185 F.3d at 526 (citing *Flores v. County of Hardeman*, 124 F.3d 736, 738-39 (5th Cir.1997)). A prison official acts with subjective deliberate indifference when he "had subjective knowledge of a substantial risk of serious harm to a pretrial detainee but responded with deliberate indifference to that risk." *Hare*, 74 F.3d at 650. *See also, Sibley v. Lemaire*, 184 F.3d 481, 489 (5th Cir.1999) ("In *Hare* ... we adopted the same deliberate indifference standard for pretrial detainees as the one articulated by the Supreme Court in *Farmer v. Brennan*, 511 U.S. 825, 114 S.Ct. 1970, 128 L.Ed.2d 811 (1994), for convicted prisoners: '[i]t is, indeed, fair to say that acting or failing to act with deliberate indifference to a substantial risk of serious harm to a prisoner is the equivalent of recklessly disregarding that risk.' ").

Although the courts have carefully distinguished the conditions of confinement cases from those cases arising from specific acts or omissions, they have also noted that "the reasonable-relationship test employed in conditions cases is 'functionally equivalent to' the deliberate indifference standard employed in episodic cases." *Scott*, 114 F.3d at 54 (citing *Hare*, 74 F.3d at 643).

Plaintiffs' complaint alleged both episodic acts of individuals as well as conditions of confinement. However, plaintiff's generalized claims of inadequate clothing and the like, fail to state a valid constitutional claim. The Constitution does not mandate "comfortable prisons."

-6-

*Rhodes v. Chapman*, 452 U.S. 337, 349, 101 S.Ct. 2392, 2400, 69 L.Ed.2d 59 (1981). However, the Fourteenth Amendment does prohibit detainees from being held under inhumane conditions. Plaintiff's allegations do not suggest that he was forced to endure such inhumane conditions.

    **b. Retaliation**

Plaintiff contends that retaliation was the reason that he was placed in SHU. More specifically, he states that he was retaliated against because he asserted his right to contest the appointment of representatives. "To state a valid claim for retaliation under section 1983, a prisoner must allege (1) a specific constitutional right, (2) the defendant's intent to retaliate against the prisoner for his or her exercise of that right, (3) a retaliatory adverse act, and (4) causation." *Jones v. Greninger*, 188 F.3d 322, 324-25 (5th Cir.1999). "[I]f the [prisoner] is unable to point to a specific constitutional right that has been violated, the claim will fail." *Id*. at 325. The prisoner must allege more than his personal belief that he is the victim of retaliation, rather, he "must produce direct evidence of motivation or, the more probable scenario, 'allege a chronology of events from which retaliation may plausibly be inferred." ' *Woods v. Smith*, 60 F.3d 1161, 1166 (5th Cir.1995) (quoting *Cain v. Lane*, 857 F.2d 1139, 1143 n. 6 (7th Cir.1988). Finally, "causation" requires the prisoner to show that "but for the retaliatory motive the complained of incident ... would not have occurred." *Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.1997). "This places a significant burden on the [prisoner]." *Woods v. Smith*, 60 F.3d at 1166.

Here, plaintiff has offered only conclusory opinions that the defendants had a retaliatory motive. Plaintiff's "[b]are allegations of malice do not suffice to subject" the defendants "either to the costs of trial or the burdens of broad-reaching discovery." *Al-Ra'id v. Ingle*, 69 F.3d 28,

33 (5th Cir.1995). Clearly, plaintiff's conclusory allegations of retaliation are insufficient to establish a constitutional claim for retaliation.

### c. Administrative Segregation

Plaintiff also contends that he was placed in SHU without the proper hearings.

Courts analyze immigration detainee and pretrial detainee claims concerning custody levels alike. *Ortega v. Rowe*, 796 F.2d 765, 767 (5th Cir.1986). A pretrial detainee's constitutional claims are considered under the Due Process Clause instead of the Eighth Amendment. *Id*. (citing *Bell v. Wolfish*, 441 U.S. 520, 535 n. 16 (1979)). Under the Due Process Clause, "a detainee may not be punished prior to an adjudication of guilt." *Bell v. Wolfish*, 441 U.S. 520, 535 (1979). This is because "[a] person lawfully committed to pretrial detention has not been adjudged guilty of any crime." *Id*. at 536. However, this court has repeatedly affirmed that prison officials should be accorded the widest possible deference in classifying prisoners' custodial status as necessary to "maintain security and preserve internal order." *McCord v. Maggio*, 910 F.2d 1248, 1251 (5th Cir.1990); *Wilkerson v. Stalder*, 329 F.3d 431, 436 (5th Cir.2003). "And in the specific context of administrative lockdown, we have clearly held that 'absent extraordinary circumstances, administrative segregation as such, being an incident to the ordinary life as a prisoner, will never be a ground for a constitutional claim.' " *Hernandez v Velasquez,* 522 F.3d 556, 562 (5th Cir.2008).citing *Pichardo v Kinker,* 73 F.3d 612, 612-13 (5th Cir.1996).

Inmates, therefore, have no protectable property or liberty interest in custodial classification. The classification of prisoners is a matter within the discretion of prison officials. Absent an abuse of discretion, "federal courts are loathe to interfere with custodial classifications

established by prison officials." *Whitley v. Hunt*, 158 F.3d 882, 889 (5th Cir.1998) (citations omitted), abrogated on other grounds by *Booth v. Churner*, 532 U.S. 731, 735 (2001).

By plaintiff's own admission, he openly challenged the inmates chosen as "representatives." His physical safety was a legitimate governmental objective, and his placement in SHU, without more, did not violate his due process rights. See *Bell v. Wolfish*, 441 U.S. 520, 539, 99 S.Ct. 1861, 60 L.Ed.2d 447 (1979) ("[I]f a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to 'punishment.' ").

### d. Access to the Courts/Law Library

Plaintiff makes a general allegation that immigration detainees are not given equal access to the law library. Plaintiff is correct that he has the right of access to the courts. However, in this action, plaintiff's claims do not rise to the level of a constitutional violation. In *Bounds v. Smith*, 430 U.S. 817, 822 (1977), the Supreme Court held that prisoners have a fundamental constitutional right to "adequate, effective, and meaningful" access to the courts. *See also, Johnson v. Rodriguez*, 110 F.3d 299, 310 (5th Cir.), cert. denied, 522 U.S. 995 (1997). A prisoner's right of access is not unlimited, "it encompasses only 'a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement.' " *Id.* at 310–311 (quoting *Lewis v. Casey*, 518 U.S. 343, 116 S.Ct. 2174, 2182 (1996)).

In *Lewis v. Casey*, the Supreme Court found that the right of access to the courts does not:

> guarantee inmates the wherewithal to transform themselves into litigating engines capable of filing everything from shareholder derivative actions to slip-and-fall claims. The tools it requires to be provided are those that the inmates need in

> order to attack their sentences, directly or collaterally, and in order to challenge the conditions of their confinement. Impairment of any *other* litigating capacity is simply one of the incidental (and perfectly constitutional) consequences of conviction and incarceration.

*Id.* at 355.

Furthermore, prison officials have considerable discretion in choosing the mechanism and forms of assistance they will furnish to prisoners for the purpose of allowing prisoners to file non-frivolous legal claims. *See, Lewis*, at 356 ("Of course, we leave it to prison officials to determine how best to ensure that inmates ... have a reasonably adequate opportunity to file nonfrivolous legal claims challenging their convictions or conditions of confinement."). "While the precise contours of a prisoner's right of access to the courts remain somewhat obscure, the Supreme Court has not extended this right to encompass more than the ability of an inmate to prepare and transmit a necessary legal document to a court." *Brewer v. Wilkinson*, 3 F.3d 816, 821 (5th Cir.1993).

The Supreme Court in *Lewis*, explained that before an inmate may prevail on a claim that his constitutional right of access to the courts was violated, he must demonstrate that the suffered "actual injury," i.e. that the denial of access hindered his efforts to pursue a legal claim. *Lewis,* 518 U.S. at 351. *see also, Ruiz v. United States,* 160 F.3d 273, 275 (5th Cir.1998) (without proving actual injury, the prisoner/plaintiff cannot prevail on an access-to-courts claim); *Chandler v. Baird*, 926 F.2d 1057, 1063 (5th Cir.1991)(A civil rights claim cannot be based on "minor and short-lived" impediments to access in the absence of actual prejudice); *Henthorn v. Swinson*, 955 F.2d 351, 354 (5th Cir.1992), cert. denied, 504 U.S. 988 (1992) (If a litigant's position is not prejudiced by the claimed violation, his claim of denial of access to the courts is not valid).

In the instant case, plaintiff has not demonstrated that defendants' alleged actions hindered his ability to pursue a legal claim. Accordingly, absent any cognizable injury or prejudice, plaintiff cannot raise a claim of denial of access to the courts and his claims should be dismissed for failing to state a claim upon which relief can be granted pursuant to 28 U.S.C. § 1915A(b)(1).

### e. Discrimination

Plaintiff complains that he and other immigration detainees are the victims of discrimination because they are given less privileges (changes of clothes, access to showers, etc.) than non-immigration inmates, specifically the American inmates. Claims of discrimination arise, if at all, under the Equal Protection Clause of the Fourteenth Amendment. The Fourteenth Amendment equal protection clause essentially directs that all persons similarly situated be treated alike. *Patin v. Richard*, 2011 WL 9118, (W.D.La.2011) citing *City of Cleburne, Texas v. Cleburne Living Center, Inc.*, 473 U.S. 432, 439, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313 (1989); *See also, Crull v.. City of New Braunsfels*, 267 Fed. Appx. 338, 341 (5th Cir.2008) citing *Stoneburner v. Sec'y of the Army*, 152 F.3d 485, 491 (5th Cir.1998). Thus, to state an equal protection claim a plaintiff must allege, inter alia, that similarly situated individuals were treated differently. *Muhammad v. Lynaugh*, 966 F.2d 901, 903 (5th Cir.1992).

In the instant matter, the plaintiff does not contend that he was treated differently than other immigration detainees. Accordingly, because plaintiff has failed to allege or demonstrate that he has been treated differently than similarly situated persons, plaintiff has failed to state an equal protection claim. Plaintiff's claim should therefore be dismissed.

### III.   Injunctive Relief

As previously stated, plaintiff has been released from FDCO and removed from the United States. Therefore, his request for injunctive relief (specifically release from SHU confinement and for a hearing every thirty days in order to justify his continued confinement in SHU) is moot.

The law is clear that the transfer of a prisoner out of an allegedly offending institution generally renders his claims for injunctive relief moot. *Weinstein v. Bradford*, 423 U.S. 147, 149, 96 S.Ct. 347, 46 L.Ed.2d 350 (1975) (*per curiam*) (plaintiff's individual suit challenging parole procedures mooted by release absent "demonstrated probability" that he would again be subject to parole board's jurisdiction); *Cooper v. Sheriff, Lubbock County, Tex.*, 929 F.2d 1078, 1084 (5th Cir.1991) (*per curiam*) (holding that prisoner transferred out of offending institution could not state a claim for injunctive relief). In order for plaintiff's claims to remain viable, he would have to establish that the possibility of returning to FDCO would make his claims capable of repetition yet evading review. *See, Hardwick v. Brinson*, 523 F.2d 798, 800 (5th Cir.1975). Plaintiff must show either a "demonstrated probability" or a "reasonable expectation" that he would again be incarcerated at FDOC. *Murphy v. Hunt*, 455 U.S. 478, 482, 102 S.Ct. 1181, 71 L.Ed.2d 353 (1982). At its most lenient, the standard is not mathematically precise and requires that plaintiff show a "reasonable likelihood" of repetition. *Honig v. Doe*, 484 U.S. 305, 318-19, 108 S.Ct. 592, 98 L.Ed.2d 686 (1988). Even under the most permissive interpretation, plaintiff's complaint does not, and cannot, meet that standard. Simply put, plaintiff has been removed from this country and his request for injunctive relief is moot. *See, Herman v. Holiday*, 238 F.3d 660 (5th Cir.2001)(even if plaintiff had established an Eighth Amendment violation, his transfer from the offending institution rendered his claims for declaratory and injunctive relief moot) citing

*Cooper v. Sheriff, Lubbock County, Tex.,* 929 F.2d 1078, 1084 (5th Cir.1991). *See also, Edwards v. Johnson*, 209 F.3d 772, 776 (5th Cir.2000) (an alien detainee's claims for injunctive relief intended to correct policies and practices at particular detention center were rendered moot when he was transferred out of that center.).

## CONCLUSION

For the reasons set forth above,

**IT IS RECOMMENDED** that plaintiff's civil rights complaint be **DENIED AND DISMISSED WITH PREJUDICE** as moot, frivolous and for failing to state a claim upon which relief can be granted in accordance with 28 U.S.C.1915A(b)(1).

Under the provisions of 28 U.S.C. §636(b)(1)(C) and Fed.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have fourteen (14) business days from service of this report and recommendation to file specific, written objections with the clerk of court. A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

**Failure to file written objections to the proposed factual finding and/or the proposed legal conclusions reflected in this Report and Recommendation within fourteen (14) days following the date of its service, or within the time frame authorized by Fed.R.Civ.P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the District Court, except upon grounds of plain error. See *Douglas v. United Services Automobile Association,* 79 F.3d 1415 (5th Cir. 1996).**

THUS DONE this 6th day of July, 2012.

_____
KATHLEEN KAY
UNITED STATES MAGISTRATE JUDGE